IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

AMBY ELKINS,                    )
                                )
        Plaintiff,               )
                                )
v.                              )    Case No. CIV-09-431-FHS
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social          )
Security Administration,        )
                                )
        Defendant.               )

## REPORT AND RECOMMENDATION

Plaintiff Amby Elkins (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on August 9, 1961 and was 47 years old at the time of the ALJ's decision. Claimant completed her education through the ninth grade and attended cosmetology school. Claimant has worked in the past as a hairdresser. Claimant alleges an inability to work beginning February 25, 2006, due to limitations

3

resulting from degenerative disc disease, rheumatoid arthritis, and tendinitis in her arms.

**Procedural History**

On September 18, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On March 9, 2009, an administrative hearing was held before ALJ Osly F. Deramus in McAlester, Oklahoma. On April 20, 2009, the ALJ issued an unfavorable decision on Claimant's application. On September 21, 2009, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) failing to find Claimant's impairments met a listing; (2) failing to properly consider the opinions of Claimant's treating physician; (3) engaging in a faulty credibility determination; and (4) arriving at an RFC assessment which is not supported by substantial evidence.

**Listing Analysis**

Claimant contends the ALJ erred when he failed to find she meets Listing 1.04 governing spinal disorders. Claimant was treated for back pain by Dr. Thomas Osborn, Jr. beginning in 2002. He diagnosed Claimant with degenerative arthritis of the spine. At times, Claimant has used assistive devices to ambulate, including a cane and wheelchair. (Tr. 202-230).

On April 19, 2004, Claimant was referred to Dr. W. Emery Reynolds. An MRI showed multi-level degenerative disc disease with spurs. Dr. Reynolds recommended a steroid injection. (Tr. 187).

On April 22, 2004, Claimant was referred to Dr. Gaylan D. Yates. Upon examination, Dr. Yates found Claimant to be experiencing tenderness in the lumbar region with positive straight leg raising on the left. Dr. Yates suspected Claimant had a herniated disc at L4-L5 with probable left L5 radiculopathy. (Tr. 257). Dr. Yates performed a lumbar selective epidural nerve root block and transligamentum epidural steroid injection. (Tr. 259).

5

On November 27, 2006, Claimant underwent a consultative physical examination by Dr. Ravinder R. Kurella. He determined Claimant had significant restriction of range of motion of her back and neck, some restriction of range of motion of her bilateral hip associated with pain, full range of her ankle joints, some restriction of range of motion of her shoulder joints associated with pain. Claimant's hand grip was 3-4/5 on both sides. Straight leg raising was positive on both sitting and lying down. Dorsi-flexion of the great toe and dorsi-inversion of the foot were weak on both sides. Significant tenderness associate with muscle spasms was noted in the lumbar and cervical regions. Deep tendon reflexes in her ankle on the right side and knee and ankle on the left side were decreased. (Tr. 318).

Dr. Kurella noted Claimant walked slowly with a cane, which was self-prescribed. He believed there was a risk of fall secondary to her left leg giving way. Claimant looked to be in pain. Claimant could do heel walking and toe walking on the right side but could not do so on the left secondary to severe low back pain. Id.

On December 2, 2006, Dr. Lawrence Kaczmarek conducted a consultative examination of Claimant. He diagnosed Claimant at Axis I: Somato form disorder, NOS, Depressive disorder, NOS; Axis

II: No diagnoses; Axis III: Osteoarthritis with L4-L5 bulging disc at one level according to neuro-surgical report and hypertension, worsening obesity as Claimant failed to put together a rehabilitation and exercise program; Axis IV: Medical, social, family, financial, and occupational concerns; Axis V: GAF of 53. (Tr. 328).

On March 27, 2007, Dr. Osborn completed a Medical Source Opinion of Residual Functional Capacity form on Claimant. He determined Claimant could sit, stand, or walk for between 0-1 hours, frequently lift/carry less than 10 pounds, never use her arms for reaching, pushing, and pulling. Never use her hands for grasping, handling, fingering, or feeling. Claimant would need to rest due to pain and fatigue. Dr. Osborn diagnosed Claimant with severe degenerative arthritis of the spine and generalized arthritis. (Tr. 374).

Dr. Osborn completed an additional Medical Source Opinion of Residual Functional Capacity form on July 22, 2008. He made the same findings on functional restrictions for Claimant as in the March 27, 2007 statement. He also added the bases for his findings were pain and decreased range of motion in Claimant's back, neck, shoulders, elbows, and feet. Dr. Osborn also offered that Claimant frequently needed help getting up from a chair. (Tr. 393).

7

On February 8, 2007, Dr. Thurma Fiegel completed a Physical Residual Functional Capacity Assessment form on Claimant. Dr. Fiegel estimated Claimant could occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds, stand and/or walk for at least 2 hours in an 8 hour workday, sit for about 6 hours in an 8 hour workday, and engage in unlimited pushing and pulling. Dr. Fiegel concluded Claimant complains of back problems and arthritis and has a history of degenerative disease of the spine, but has not had surgery. Claimant alleged rheumatoid arthritis but Dr. Fiegel found no diagnosis or treatment for the condition in the file. Dr. Fiegel noted Claimant used a cane but that it was self-prescribed and did not believe it was necessary. Dr. Fiegel found lumbar flexing to 80 degrees and no nerve root compression. (Tr. 363). Dr. Fiegel also limited Claimant to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 364).

On February 7, 2007, a Mental Residual Functional Capacity Assessment form was completed by Dr. Carolyn Goodrich. Dr. Goodrich found marked limitations on Claimant's ability to understand and remember detailed instructions, ability to carry out detailed instructions, and ability to interact appropriately with the general public. (Tr. 344-45). She concluded Claimant could

8

perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, cannot relate to the general public, and can adapt to a work situation. (Tr. 346).

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease, arthritis, and depression. (Tr. 41). He assessed Claimant's RFC as including the capacity to lift and/or carry 10 pounds occasionally and 5 pounds frequently, stand and/or walk for 2 hours in an 8 hour workday, sit for 6 hours in an 8 hour workday, occasionally stoop, crouch, crawl, kneel, balance, and climb stairs while never climbing ladders. Claimant was limited to simple tasks with routine supervision, where she relates to supervisors and peers on a superficial level, can adapt to work situations but not relating to the general public. (Tr. 42).

Claimant contends Listing 1.04 should have been applied to her situation. Listing 1.04A requires certain factual findings be present, in stating:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower

9

back, positive straight-leg raising test (sitting and supine) . . .

20 C.F.R. Pt. 404, Subpt. P, App. I § 1.04A.

For a claimant to demonstrate that an impairment meets a listing, "it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). The medical evidence does not reveal a diagnosis of nerve root compression. While Claimant has suffered pain and positive straight leg raising, the evidence is less clear as to the limitation on motion, motor loss and sensory or reflex loss.[2] Moreover, Claimant's assertion that her obesity should have been considered in connection with meeting Listing 1.04A has no foundation in the medical record. No physician has imposed restrictions upon her based upon her obesity.

Claimant also contends she meets Listing 12.07 governing somatoform disorder. Somatoform disorder exists where "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07 (2000). This Court finds no error in the ALJ's analysis of Claimant's restrictions in the areas of daily living, social

---

[2] Both parties reference the requirement for an inability to ambulate effectively. This requirement, however, only applies to Listing 1.04C addressing stenosis.

functioning, concentration, persistence or pace, and episodes of decompensation - two of these areas in which Claimant must demonstrate marked limitation. Because marked limitation does not exist as required, Claimant does not meet Listing 12.07. Accordingly, this Court finds no error in the ALJ's finding Claimant did not meet a listing.

### Treating Physician's Opinion

Claimant next contends the ALJ improperly rejected the opinions of Dr. Osborn, her treating physician. In his decision, the ALJ discounted the opinion of Dr. Osborn as reflected in his medical source statement. The ALJ cited the prevailing standards for consideration of a treating physician's opinion. He also concluded Dr. Osborn's findings would essentially mean Claimant would require constant care because she could not use her hands and arms at all and can sit/stand for one hour or less per day. Dr. Osborn's conservative treatment with medication only belies this determination. The ALJ thoroughly explained his rejection of Dr. Osborn's opinion as being inconsistent with the remainder of the medical record and his own treatment records. This Court finds no error in his analysis or his conclusions.

### Credibility Determination

Claimant also challenges the ALJ's findings on her

11

credibility. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

In this case, the ALJ accurately assessed Claimant's claims of

pain and limitations in light of the medical record available to him. The ALJ offered ample evidence of inconsistencies in the medical record and Claimant's assertions of pain and limitation. This Court finds no deficiencies in his analysis which would warrant reversal.

### RFC Evaluation

Claimant contends the need for a cane removes her from the ability to perform sedentary work. No medical professional found the necessity for Claimant to use a cane - they merely acknowledged that she was doing so. The failure of the ALJ to include the use of a cane in his RFC analysis is not error.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such

findings.

DATED this 16th day of March, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE